Stuart I. Koenig (SBN 102764)
Sandford L. Frey (State Bar No. 117058)
LEECH TISHMAN FUSCALDO & LAMPL, INC.
US Bank Tower
633 West Fifth Street, 48th Floor
Los Angeles, California 90071
Telephone: (213) 246-4970; Facsimile: (213) 640-4002
*Skoenig@leechtishman.com*
*Sfrey@leechtishman.com*

[Proposed] Reorganization Attorneys for
Sabemos Beverages, LLC, Debtor and Debtor in Possession

# UNITED STATES BANKRPUTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | CASE NO.:  2-17-bk-19529-DS |
| **SABEMOS BEVERAGES, LLC, d/b/a Sages Beverages,** | **Chapter 11** |
| Debtor. | **FIRST DAY EMERGENCY MOTION BY DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER AUTHORIZING FINAL POST-PETITION FINANCING BY DEBTOR'S MAJORITY EQUITY HOLDER PURSUANT TO BANKRUPTCY CODE § 364(d)(1), ON A SECURED BASIS AS TO A PORTION AND ADMINISTRATIVE PRIORITY PURSUANT TO BANKRUPTCY CODE §503(b) AS TO THE BALANCE;** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT THEREOF** |
| | Date:  August 8, 2017<br>Time: 10:00 a.m.<br>Ctrm: 1639<br>225 East Temple Street<br>Los Angeles, California |

1   TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY

2   JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

3   PARTIES:

4   Sabemos Beverages, LLC, d/b/a Sage Beverages, Debtor and Debtor-in-Possession

5   ("Debtor") will and does hereby move ("DIP Motion") for entry of an order authorizing and

6   approving final post-petition financing ("DIP Motion") by the Debtor's majority equity holder,

7   Lucky Sages LLC ("DIP Lender") in the amount of up to $120,000.00  ("DIP Loan"), which may

8   be used for, among other things, quarterly fees, operating expenses, costs of administration

9   (including, but not limited to, professional fees and expenses), fees and costs associated with any

10  litigation, excluding any actions against MBMJ Capital LLC d/b/a Continental Business Credit

11  ("Continental") as discussed in greater detail below, and any other costs or expenses necessary for,

12  or related to, the administration of the estate ("Permitted Uses").  The DIP Loan will be made

13  pursuant to Title 11, United States Code ("Bankruptcy Code"), Sections 364(d)(1), on a secured

14  basis and 503(b) with administrative priority, and granting such other and further relief as is just

15  and appropriate.

16  The DIP Motion is one of several "First Day Motions" being filed by the Debtor.  They are

17  denominated as "First Day Motions" because they fall within the type of emergency motions

18  characteristically filed by debtors in chapter 11 cases on the first day.

19  PLEASE TAKE FURTHER NOTICE that this Motion is based DIP Motion, the

20  Memorandum of Points and Authorities, the Declarations of Leonardo R. Fernandez, Jr. and

21  Gregory Doll, the statements and representations of counsel appearing at the hearing on the DIP

22  Motion, Bankruptcy Code §§ 364, 503 and 105, Federal Rule of Bankruptcy Procedure ("FRBP")

23  4001(c), Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of

24  California ("LBR") 4001, 9013-1, and all other evidence properly before the Court at the hearing

25  on the DIP Motion.

26  PLEASE TAKE FURTHER NOTICE that there is no separate agreement for the financing

27  and the DIP Motion and order thereon shall contain all of the terms of the financing arrangement.

28  PLEASE TAKE FURTHER NOTICE that the DIP Loan shall not accrue any post-petition

1  interest until confirmation of a Plan of Reorganization or Liquidation by the Debtor at which time

2  the rate, if any, shall be set by the Plan.

3       PLEASE TAKE FURTHER NOTICE that there are no payments required to be made under

4  the DIP Loan during the pendency of the Case.  The maturity date of the DIP Loan shall be the

5  earlier to occur of: (a) entry of a final order confirming a plan in this case; or (b) the occurrence of

6  an Event of Default (expressly set forth below).

7       PLEASE TAKE FURTHER NOTICE that, as explained more fully below, $75,000 of the

8  DIP Loan is being made by the DIP Lender subject to the granting of a senior security interest in

9  the proceeds of the Rights of Action, and $45,000 is being made by the DIP Lender as an

10  administrative expense.  As such, it is requested that up to $75,000 of the DIP Loan be granted a

11  lien senior to any and all other liens on the proceeds from the Rights of Action.

12       PLEASE TAKE FURTHER NOTICE that, in accordance with FRBP 4001(c)(B)(i)-(xi),

13  and Official Form 4001-2, notice is hereby given that the terms of the financing do not contain any

14  provision for any of the following: cross-collateralization; waiving any claims respecting the

15  validity, perfection or amount of any pre-petition debt; waiving any rights under Bankruptcy Code

16  §506(c); providing for any liens against any avoidance actions; deeming pre-petition debt to be

17  post-petition debt or providing for any security for any pre-petition debt; providing for any

18  professional fee carve-outs; divesting the Debtor of any discretion under a Plan; releasing any

19  claims against the DIP Lender; granting relief from stay; or waiving any procedural requirements.

20       PLEASE TAKE FURTHER NOTICE that an "Event of Default" under the DIP Loan is

21  limited to the occurrence or existence of any one or more of the following events: (a) failure or

22  reversal of the final order approving the DIP Loan; (b) conversion of this Chapter 11 case to a case

23  under Chapter 7 of the Bankruptcy Code; or (c) dismissal of this Chapter 11 case. Sabemos

24  Beverages, LLC d/b/a Sages Beverages ("Debtor") the Debtor and Debtor in Possession in the

25  above captioned case, in accordance with Sections 105(a) and 1104(a) of the title 11 of the United

26  States Code ("Bankruptcy Code"), hereby moves this Court for the appointment of a Chapter 11

27  trustee ("Trustee Motion").

28

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING

WHEREFORE, the Debtor respectfully requests that this Court enter an emergency order:

1.      Approving the requested financing on final basis;

2.      Providing that $75,000 of the DIP Loan shall be secured by a senior lien over the proceeds arising out of the Rights of Action, senior to any existing liens against such proceeds;

3.      That $45,000 of the DIP Loan is entitled to an administrative claim under Bankruptcy Code § 503(b)(1);

4.      Granting any other and further relief as may be just and proper.

Dated:  August 4, 2017                    LEECH TISHMAN FUSCALDO & LAMPL, INC.


                                          By:   /s/ Stuart I. Koenig
                                                STUART I. KOENIG
                                                SANDFORD L. FREY
                                          [Proposed] Reorganization Attorneys for Debtor and
                                          Debtor in Possession

FIRST DAY EMERGENCY MOTION FOR ORDER
                                          AUTHORIZING POST-PETITION FINANCING

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF FACTS

### A.   INTRODUCTORY STATEMENT.

By this DIP Motion, the Debtor seeks approval from this Court for final post-petition financing to be provided by the DIP Lender, which is the Debtor's sole equity holder, the proceeds of which will be used for Permitted Uses, until the Debtor has a reasonable opportunity to propose and confirm its Plan.

The Debtor is a limited liability company, doing business as Sage Beverages.  The Debtor was engaged in the business of the importation, sales and marketing of alcoholic beverage products.  At the time the Bankruptcy Petition was filed, the Debtor had ceased business operations and was under the control of a State Court Receiver.

On or about September 9, 2016, Continental filed an action in the State Court, County of Los Angeles, entitled MBMJ Capital LLC, a Delaware limited liability company, doing business as Continental Business Credit, Plaintiff, v. Sabemos Beverages, LLC, a Delaware limited liability company, doing business as Sage Beverages, Kevin William Swadish, an individual, and Does 1 through 60, Case No. LC 104615 ("State Court Action"). On September 12, 2016 the Debtor entered into a stipulation with Continental for the appointment of a receiver and for preliminary injunction ("Stipulation").  Pursuant to the terms of the Stipulation, Howard Grobstein was appointed as receiver ("Receiver").  As of the Petition Date the Debtor is informed that the amount owing to Continental is approximately $1,329,153.67.

The Debtor is informed and believes that, shortly after his employment, the Receiver terminated the business operations of the Debtor and has been liquidating all of the Debtor's assets. The Debtor is further informed and believes that as of the filing of the DIP Motion, the only assets of value the Debtor has remaining are litigation and potential litigation claims against third parties, which are discussed in greater detail below.  Despite reassurances by Continental that it would pursue those claims on behalf of the estate, Continental has instead determined that it would spend the estates limited resources for other purposes that would only benefit Continental, leaving all of the other creditors of this estate with no source of recovery. Continental's decision to pursue claims

1  against the Debtor's equity holder and the largest unsecured creditor and indirect equity holder of

2  the Debtor, to the extent successful, would only benefit Continental and prejudice the rights of all

3  of the other creditors of this estate.

4        Given that essentially all of the Debtor's inventory and other assets have been liquidated,

5  the Debtor's litigation claims held by the Estate are the only source of recovery for the unsecured

6  creditors and equity holder of this Estate.  In order to pursue those claims, the Debtor must engage

7  special counsel. Although Debtor's proposed special counsel has agreed to represent the Debtor on

8  a contingency basis, the contingency agreement requires the Debtor to be responsible for all hard

9  costs related to the litigation. Because the Debtor does not have sufficient cash on hand to pay the

10  related costs, the Debtor seeks approval to borrow the funds necessary, on a secured basis, for the

11  limited purpose of funding the litigation against third parties so that the Debtor can maximize the

12  value of the estate for the benefit of all the creditors, not just Continental.  The Debtor is informed

13  and believes that without the DIP Loan, the Debtor will be unable to pursue these claims, to the

14  detriment of both the unsecured creditors and Continental, as there is no other source of recovery to

15  pay the claim of Continental in full, unless Continental is willing to fund the litigation costs.

16        **B.     Background**

17        The Debtor is a limited liability company, doing business as Sage Beverages.  Prior to the

18  filing of its Bankruptcy Petition, the Debtor was engaged in the importation, sales and marketing of

19  alcoholic beverage products.  Pursuant to the Stipulation entered into between the Debtor and

20  Continental on September 12, 2016, Howard Grobstein was appointed as the State Court receiver.

21  Subsequent to his appointment, all business operations of the Debtor were ceased and the Receiver

22  undertook the liquidation of the Debtor's assets.  The Debtor is informed and believes, based upon

23  reports from the Receiver, that the cost of sale of the remaining assets of this estate exceeds their

24  fair market value, leaving the claims against third parties as the only remaining assets of value. The

25  Chapter 11 Bankruptcy Case and Jurisdiction

26        The Debtor commenced its bankruptcy case by filing in this Court a voluntary petition for

27  relief under chapter 11 of the Bankruptcy Code on August   , 2017 ("Petition Date").  The Debtor

28  continues to manage its affairs as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a)

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING

and 1108.  Concurrent with the filing of its Bankruptcy Petition, and as part of its First Day

Motions, the Debtor filed a motion for the appointment of a chapter 11 trustee, and will request the

appointment of Howard Grobstein as the trustee. Given his familiarity with the Debtor, and the fact

that he is on the panel of approved trustees in the Central District, the Debtor believes that the

appointment of Mr. Grobstein is in the best interests of creditors of this estate based on his

familiarity with the Debtor and his experience as a trustee.  An official committee of creditors

holding unsecured claims has not yet been formed.  The Court has core jurisdiction over this matter

pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (D), (K) and (M).

### C.    The Litigation

In December of 2015 the Debtor received notice from one of its suppliers, Cerveceria de

Baja California, SA de CV ("Cucapa"), that it was terminating the Exclusive Import Agreement

("Import Agreement") Cucapa had entered into with the Debtor in March of 2015.  The Debtor

contends that Cucapa improperly terminated the Import Agreement by, among other things, its

failure to pay the termination fee provided for in the Import Agreement and its failure to provide

the Debtor with evidence that it used its best efforts to have its buyer assume the obligations under

the Import Agreement as required by the terms of the agreement.  Pursuant to the terms of the

Import Agreement the Debtor commenced an arbitration proceeding against Cucapa with JAMS

filed an action commenced an arbitration in the Superior Court of County of Los Angeles JAMS in

San Diego against Cerveceria de Baja California, SA de CV ("Cucapa") , Inc. titled Sabemos

Beverages LLC, Plaintiff v. Cocopa, et. al. Defendants, Case No. 121033016  (the "Cucapa

Litigation").  A true and correct copy of the complaint arbitration demand is attached hereto and

incorporated herein by reference as Exhibit "A".  As explained more fully in the declaration of

Gregory Doll attached hereto, the Debtor believes that it has valid and enforceable claims against

Cucapa with a potential value in excess of $13 million.

In February of 2016, the Debtor commenced a second arbitration proceeding through the

American Arbitration Association ("AAA") against Paragon Food Company, d/b/a Left Coast

Brewing Company ("Paragon") for failure to pay non-disputed commissions in amounts exceeding

$27.5 million (the "Paragon Litigation").  Attached hereto and incorporated herein by reference as

1  Exhibit "B" is a true and correct copy of the Demand for Arbitration for the Paragon Litigation.

2  The Debtor was in the process of converting the Paragon Litigation from an arbitration proceeding

3  into a court filing a second State Court action in San Diego County against Left Coast Paragon

4  Foods (the "Left Coast Litigation"), but has been unable to do so because of the actions of

5  Continental.  The Debtor believes it has valid and enforceable claims against Left Coast Paragon in

6  excess of $5 million.  The Left Coast Paragon Litigation and the Cucapa Litigation are referred to

7  herein collectively as the "Rights of Action".

8      The Rights of Action are limited to the Cucapa and Left Coast Paragon Litigation only.

9  The Debtor agrees that none of the funds from the DIP Loan shall be used in connection with any

10  claims, actions or proceedings against Continental for lender liability, fraud, fraud in the

11  inducement, or challenging the legality, validity, priority, perfection or enforceability of its loan to

12  the Debtor or Continental's liens on and security interest in any of the assets of the Debtor, with the

13  exception of the Rights of Action.

14      As of the Petition Date, the Debtor is informed and believes that Continental asserts that it

15  has a senior security interest in all of the Debtor's assets including the Rights of Action.  However,

16  Continental has been utilizing the assets of the Debtor to make payments on the interest and

17  principal on its loan and is unwilling to pay any of the administrative fees of the business or fund

18  any of the litigation costs associated with the Rights of Action for the benefit of all creditors.

19  Because Continental is unwilling to fund the enforcement of the   Rights of Action, the sole equity

20  holder of the Debtor has agreed to provide the funding, conditioned upon this Court granting the

21  DIP Lender a lien senior to all other interests in the Rights of Action, including any claims asserted

22  by Continental, in an amount not to exceed $75,000.

23      D.      The Financing

24      By this DIP Motion, the Debtor seeks approval for the DIP Loan (which is essentially a

25  credit line) of up to $120,000.00 provided by the DIP Lender, which may be used by the Debtor for

26  the Permitted Uses in connection with this Chapter 11 case.

27      Up to $75,000 of the proposed DIP Loan is being made, pursuant to Bankruptcy Code

28  §364(d)(1), on a secured basis, secured by the Rights of Action, with the DIP Lender granted a lien

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING

senior to all other liens against the Rights of Action, including but not limited to any security interest that may be held by Continental.  As explained below, the Debtor believes that the interests of Continental are adequately protected based on the evaluation of the Debtor's proposed Special Counsel, Greg Doll, regarding the likely outcome of the Rights of Action.  As to the balance of the DIP Loan, $45,000, it is being made on an unsecured basis and allowable under Bankruptcy Code §503(b) (1) as an administrative expense.

Other than as provided for above, the DIP Lender shall not be granted a lien on any other property of the estate or granted any other priority.  The proposed DIP Loan shall not accrue any post-petition interest until after confirmation of a Plan of Liquidation by the Debtor at which time the rate, if any, shall be set by the Plan.  No payments are required to be made by the Debtor under the terms of the DIP Loan until after entry of a judgment in favor of the Debtor or an order approving the settlement of the Cucapa Litigation or the Paragon Litigation and the recovery of funds by the Debtor from either of the Rights of Action in excess of $75,000 and confirmation of a Plan of Liquidation by the Debtor, at which time the payment terms shall be set by the Debtor's Plan of Liquidation.  The DIP Loan has no maturity date (other than on as explained immediately above), the provisions of which are discussed below.

There is no separate agreement for the financing.  Instead, this DIP Motion and order approving this DIP Motion shall contain the full and complete terms of the financing arrangement. In the event that any other party, including the Continental, is agreeable to participate and fund a portion of or the entire DIP Loan, the DIP Lender would reduce or eliminate its funding of the DIP Loan.

1.    Total Amount of Financing

Up to $120,000.00 total as the Debtor determines is necessary to draw down upon from time to time.  $45,000 of the DIP loan shall be used for purposes of expenses associated with the reorganization, including but not limited to the payment of professional fees, subject to approval by the Bankruptcy Court.  $75,000 shall be used to pay the costs and expenses associated with the enforcement of the Rights of Action.

2.    Interest

None until Confirmation of the Plan.

3.    Loan Maturity

Upon the earlier to occur of: (a) entry of an order approving the settlement of the Cucapa Litigation or the Paragon Litigation and the recovery of funds by the Debtor from either of the Rights of Action in excess of $75,000;  or (b) occurrence of an Event of Default.

4.    Security Interest and Priority Rights

It is requested that the DIP Lender be granted a senior security interest in the proceeds from the Rights of Action, in an amount not to exceed $75,000, senior to any and all other interests, including but not limited to any interests asserted by Continental.  The balance of the DIP Loan, $45,000, is requested to be treated as an administrative expense pursuant to Bankruptcy Code § 503(b)(1)

5.    Default

An "Event of Default" under the DIP Loan is limited to the occurrence or existence of any one or more of the following events: (a) failure or reversal of the final order approving the DIP Loan; (b) conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; or (c) dismissal of this Chapter 11 case.

Upon the occurrence of any of the Events of Default listed above, the DIP Lender's remedy is limited to:  (a) declaring the DIP Loan to be due and payable; (b) enforcement of its lien rights in the Rights of Action, up to the amount expended by the Debtor on legal fees associated with the Rights of Action as of the date of Default, and (c) asserting its rights as an administrative claimant subject to the provisions of the Bankruptcy Code.

6.    Release of Claims

None

7.    FRBP 4001(c)(B)(i)-(xi) Disclosures

The terms of the financing do not contain any provision for any of the following:

a)    Cross-collateralization;

b)    Waiving any claims respecting the validity,

c)      Perfection or amount of any pre-petition debt;

d)      Waiving any rights under Bankruptcy Code §506(c);

e)      Providing for any liens against any avoidance actions;

f)      Deeming pre-petition debt to be post-petition debt or providing for any security for any pre-petition debt;

g)      Providing for any professional fee carve-outs;

h)      Divesting the Debtor of any discretion under a Plan;

i)      Releasing any claims against the DIP Lender; granting relief from stay; or

j)      Waiving any procedural requirements.

## II.   DISCUSSION

### A.   THE DEBTOR SHOULD BE AUTHORIZED TO ENTER INTO ITS POST-PETITION FINANCING ARRANGEMENT

#### 1.   The Terms of the Proposed Financing are Fair and Adequate and Reflect an Appropriate Exercise of the Debtor's Business Judgment.

Bankruptcy Courts give broad deference to the business decisions of chapter 11 debtors, particularly with respect to a debtor's business judgment regarding the need for and proposed use of funds. *Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). As the court noted in *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990), a "court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the DIP financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest."

The extension of post-petition financing in the instant case reflects the exercise of sound and prudent business judgment by the Debtor. The DIP Loan is being made available by the Debtor's sole equity holders. The terms of this financing remain more favorable than any other financing alternative available to the Debtor, particularly in terms of the flexible maturity date and that it will not accrue interest during the pendency of the Chapter 11 case. Finally, the DIP Lender has agreed that any other lenders, including the Secured Lender, Continental, may step into its

1   shoes with respect to any or all of the funding of the DIP Loan under the same terms and conditions

2   set forth herein, without the entry of a further Order of this Court.

3       The DIP Lender has requested that the portion of the DIP Loan to be used for the Rights of

4   Action, an amount not to exceed $75,000, be advanced on a secured basis, with the funds to be

5   used exclusively for the prosecution of the Debtor's Rights of Action, litigation which will inure to

6   the benefit of all creditors, including Continental.  The security interest granted to the DIP Lender

7   is limited to the proceeds from the Rights of Action.  With regard to the balance of the DIP Loan,

8   $45,000, the DIP Lender is requesting allowance as an administrative expense pursuant to

9   Bankruptcy Code §503(b)(1).  However, the request by the DIP Lender does not seek priority over

10  other administrative expenses of the kind specified in Bankruptcy Code Section §503(b)(1).

11      In addition, the DIP Lender has not requested any of the protections typically requested by

12  secured lenders or financial institutions, such as cross-collateralization; waiving any claims

13  respecting the validity, perfection or amount of any pre-petition debt; waiving any rights under

14  Bankruptcy Code §506(c); providing for any liens against any avoidance actions; deeming pre-

15  petition debt to be post-petition debt or providing for any security for any pre-petition debt;

16  providing for any professional fee carve-outs; divesting the Debtor of any discretion under a Plan;

17  releasing any claims against the insiders; granting relief from stay; or waiving any other procedural

18  requirements.

19      It is clear that the Debtor has been unable to obtain financing from other lenders on terms as

20  favorable as those under the financing by the DIP Lender at no interest (Declaration of Leonardo

21  Fernandez) with no fixed payment and with a flexible maturity date  no fixed payment and with a

22  flexible maturity date.  The financing is not only the best financing alternative available, it is the

23  only financing available on this basis.

24      **B.    Authorizing the Post-Petition Financing under Section 364(b) of the Bankruptcy**

25          **Code is justified because of the Tangible Benefits that the Bankruptcy Estate will**

26          **Reap from such Financing.**

27      Bankruptcy Code § 364(b) authorizes the obtaining of credit allowable under Bankruptcy

28  Code § 503(b)(1).  Here, the proposed financing provides the Debtor with the ability to pay the

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING

1   expenses associated with the Bankruptcy case and, more importantly, the costs of the enforcement

2   of the Rights of Action.  Because all of the Debtor's assets were sold prior to the Petition Date, and

3   as a result the Debtor is has no operations at this time, the Debtor does not have any source of

4   income and therefore the proceeds from the DIP Loan is the only way the Debtor can satisfy the

5   costs of administration of this Bankruptcy case and pay for the litigation of the Rights of Action.

6        The Debtor intends to file a Plan within 60 days of the Petition Date which will provide for,

7   among other things, the enforcement of the Debtor's rights and interests, including all claims it

8   may have against third parties, and for an orderly liquidation of its remaining assets.  The DIP Loan

9   will be used in part for such purposes.  Paying the administrative fees and retaining professionals

10  will enhance and accelerate the reorganization process.

11       **C.     The interests of Continental are Adequately Protected by the Anticipated Proceeds**

12            **from the Rights of Action**

13       In order for a debtor to grant a senior or equal lien to a post-petition lender, thereby priming

14  the debtor's existing lender, the debtor must show that the interests of its pre-petition lender are

15  adequately protected by the debtor's assets. Bankruptcy Code § 364(d)(1), provides for the

16  allowance of a post-petition loan on a secured basis, so long as the debtor can make an adequate

17  showing:

18       (d)(1)  The court, after notice and a hearing, may authorize the obtaining of credit
         or the incurring of debt secured by a senior or equal lien on property of the estate
19       that is subject to a lien only if –
         (A) the trustee is unable to obtain such credit otherwise; and
20       (B) there is adequate protection of the interest of the holder of the lien on the
         property of the estate on which such senior or equal lien is proposed to be granted.
21

22  See, *Suntrust Bank, v. Den-Mark Const., Inc*. 406 B.R. 683, 689 (E.D. N.C. 2009.)

23       The Debtor does not concede that Continental has a security interest in the proceeds of the

24  Rights of Action and reserves the right to object to such a claim.  The Debtor does contend that in

25  the event it is determined that Continental has a security interest in the proceeds of the Rights of

26  Action, such interests are adequately protected, as explained in the declaration of Gregory Doll,

27  attached hereto in support of the DIP Motion.

28

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING

1    The Declaration of Leonardo R. Fernandez, Jr. ("Fernandez Declaration") submitted in

2  support of the DIP Motion evidences the Debtor's efforts to find alternative financing on an

3  unsecured basis thereby satisfying the requirements of 11 U.S.C. § 364(d)(1)(A).  See, Fernandez

4  Declaration at paragraph 9.  As to the second element of Section 364(d)(1), i.e. that the interests of

5  the senior lien holder is adequately protected, the Debtor submits the Declaration of Gregory Doll

6  ("Doll Declaration"), the Debtor's State counsel in the Right of Actions.  See Doll Declaration at

7  paragraph 7.

8    Based on the Fernandez and Doll Declarations, the Debtor has satisfied the requirements of

9  11 U.S.C. §364(d)(1)(A) and therefore the DIP Motion should be granted.

10  Dated:  August 4, 2017                    LEECH TISHMAN FUSCALDO & LAMPL, INC.

11

12

13                                            By:    /s/ Stuart I. Koenig
                                                    STUART I. KOENIG
14                                                  SANDFORD L. FREY
                                                [Proposed] Reorganization Attorneys for Debtor and
15                                              Debtor in Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST DAY EMERGENCY MOTION FOR ORDER
                                    AUTHORIZING POST-PETITION FINANCING

## DECLARATION OF LEONARDO R. FERNANDEZ, JR.

I, LEONARDO R. FERNANDEZ, JR., declare as follows:

1.      I am the acting Controller of the Debtor.  Prior to the appointment of the Receiver, I had control over and personal knowledge of the Debtor's books and records. If called to testify, I could and would testify competently concerning the contents of this Declaration.  My knowledge of the facts set forth herein is based on my personal knowledge of the Debtor's books and records as well as my knowledge of the Debtor's assets.

2.      I make this declaration in support of the Debtor's Motion for the Appointment of a Chapter 11 Trustee.

3.      As of the Petition Date, Howard B. Grobstein was serving as the State Court Receiver, having been appointed pursuant to a Stipulation for Ex Parte Appointment of Receiver and Preliminary Injunction ("Stipulation") entered into by and between the Debtor and its senior secured creditor, MBMJ Capital LLC, d/b/a Continental Business Credit ("Continental") on or about September 14, 2016.  Attached hereto and incorporated as Exhibit "A" is a true and correct copy of the Stipulation and Order ("Receivership Order").

4.      I am informed and believe that pursuant to the terms of the Stipulation, the Receiver was given control of all of the Debtor's assets and authorized to operate the Debtor's business.

5.      I am further informed and believe that as of the Petition Date the Receiver has liquidated all of the assets of the Debtor and that the only remaining assets of value are litigation claims that the Debtor has against third parties.  Under the terms of the Receivership Order, upon the filing of a bankruptcy petition by one of the parties to the Stipulation (the Debtor is a party to the Stipulation), the Receiver is to comply with his obligations under Section 543 of the United States Bankruptcy Code and turn over all property of the Estate to the Debtor.

6.      I am informed and believe that the Receiver will or has complied with the terms of the Stipulation and has or is the process of turning over control of the remaining assets of this Estate to the Debtor.  At the time of the entry of the Receivership Order, Kevin William Swadish ("Swadish") was the Chief Executive Officer ("CEO") of the Debtor and responsible for the Debtor's day-to-day operations.

7.       I am informed and believe that Swadish was removed as the CEO as of the entry of the Receivership Order.  As a result of the Receivership Order and the filing of its Bankruptcy Petition, as of the Petition Date there was no party in place to take control of the assets of the Debtor and to manage its litigation claims.  In that regard, the Debtor requests that Howard Grobstein be appointed as its chapter 11 trustee based on his familiarity with the Debtor's business, remaining assets and its books and records.

8.       Based on my personal discussions with the DIP Lender, I am informed and believe that the DIP Lender understands and agrees that the senior lien requested is limited to not more than $75,000 in the proceeds from the Rights of Action, with the balance to be allowable as an administrative expense pursuant to Bankruptcy Code §503(b)(1).  [The proposed financing offered by the DIP Lender also does not seek any priority over other administrative expenses of the kind specified in Bankruptcy Code §503(b)(1).]

9.       Based on my discussions with the DIP Lender, the DIP Lender has further agreed to the limited "Events of Default" under the DIP Loan as set forth in the DIP Motion.

10.       In addition, based on my discussions with the DIP Lender, it am informed and believe that the DIP Lender has not demanded as a condition of the DIP Loan any of the protections which I understand are customarily requested by typical DIP lenders, such as cross-collateralization; waiving any claims respecting the validity, perfection or amount of any pre-petition debt; waiving any rights under Bankruptcy Code § 506(c); providing for any liens against any avoidance actions; deeming pre-petition debt to be post-petition debt or providing for any security for any pre-petition debt; providing for any professional fee carve-outs; divesting the Debtor of any discretion under a Plan; releasing any claims against the DIP Lender; granting relief from stay; or waiving any other procedural requirements.

11.       The financing is not only the best financing alternative available, it is the only financing available on this basis.  Prior to the filing of the Bankruptcy Petition, on behalf of the Debtor I unsuccessfully sought equity and debt financing from multiple sources in an effort to both continue the Debtor's business operations and to finance the litigation enforcing the Debtor's Rights of Action.  For example, I spoke with the following lenders in an effort to find financing for

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING

1  the Debtor:

2      12.    Because of the appointment of the Receiver, and the Receiver's liquidation of the

3  essentially all of the Debtor's assets, I was not able to secure any financing on behalf of the Debtor.

4      13.    The Debtor intends to propose a Plan which will provide for, among other things,

5  the enforcement of the Debtor's litigation claims and interests, including but not limited to the

6  Rights of Action.  I am informed and believe that the only significant source for recovery by the

7  creditors of this Estate, including Continental, is through the enforcement of these litigation rights.

8  It is my understanding that the DIP Loan will be used in part for such purposes.

9      I declare under penalty of perjury, under the laws of the United States of America, that the

10  foregoing is true and correct and that this declaration was executed on August 4, 2017 in El

11  Segundo, California.

12          */s/Leonardo R. Fernandez, Jr.*
            Leonardo R. Fernandez, Jr.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING

**DECLARATION OF GREGORY DOLL**

I, Gregory Doll, declare as follows:

1.      I am an attorney at law duly licensed to practice in the State of California.  I am a member of Doll, Amir & Eley LLP ("DAE"), counsel to the Debtor, in two matters in arbitration: (1) Sabemos Beverages LLC, Plaintiff v. Cucapa, et. al. Defendants, Case No. 121033016 (the "Cuocapa Litigation"), pending in JAMS in San Diego against Cerveceria de Baja California, SA de CV ("Cucapa"); and (2) an action currently in arbitration that the Debtor is in the process of converting into a court filing in San Diego County against Paragon Food Company d/b/a Left Coast Brewing Company (the "Paragon Litigation") (the Paragon Litigation and the Cucapa Litigation are referred to collectively herein as the "Rights of Action").

2.      DAE has agreed to represent the Debtor on a contingency basis, with the Debtor responsible for the out-of-pocket costs and expenses associated with the Cucapa Litigation.  As to the Paragon Litigation, DAE represented Debtor in connection with the arbitration filing and the negotiation of a stipulation to dismiss the arbitration and re-file the matter in state court.  The stipulation has not been approved by the Receiver to date.  Upon approval, the matter will need to be filed in State Court in San Diego.  DAE will not be handling that litigation going forward; rather, a local law firm in San Diego will be handling the matter on Debtor's behalf.

3.      The Cucapa Litigation arises out of claims for breach of the Exclusive Import Agreement by Cervecería de Bajá California, SA de CV, a Mexican company with its principal offices at Calz Lopez Mateos 2301 Mexicali, BC Mexico 21360 ("Cucapa") in connection the acquisition of Cucapa by Modelo MKT of Mexico, S. de RL de CV, Handicrafts of Malta and Cebada, S. de RL de CV. and Comparlia Cervecera de Zacatecas, S. de RI. (collectively "Modelo") in December 2015.  The claims relate to (1) breach of contract in connection with the Exclusive Import Agreement dated March 30, 2015 (the "Exclusive Import Agreement") for failure to use its "best efforts" to have Modelo assume the obligations of the Exclusive Import Agreement; (2) damages owed pursuant to the unpaid Termination Fee (as defined in the Exclusive Import Agreement) as required under the terms of the Exclusive Import Agreement in the amount of $13,273,000; and (3) reasonable attorneys' fees and costs provided for under the Exclusive Import Agreement.  Cucapa purportedly terminated the Exclusive Import Agreement on December

21, 2015 based on the fact that there had been a Change of Control (as that term is defined in the

Exclusive Import Agreement) of Cucapa.  Despite repeated written and oral requests by Sabemos,

Cucapa failed to provide evidence of the Change of Control, and failed to provide evidence that it

complied with the terms of the Exclusive Import Agreement or the payments required pursuant to

the Exclusive Import Agreement upon a Change of Control. Sabemos incurred significant time and

expense in connection with the sales, marketing and distribution efforts to develop the brand

recognition of both the Products and the Trademarks that Cucapa used to sell the brand while

attempting to avoid complying with the terms of the Exclusive Import Agreement and the

payments required thereunder.

4.    The  Paragon Litigation is based on claims for (1) breach of contract in connection

with the Sales and Marketing Agreement dated September 1, 2010 entered into between the Debtor

and Paragon (the "Sales and Marketing Agreement") by failing to pay $27,672.52 due in

commissions under the Sales and Marketing Agreement; (2) breach of an oral agreement to enter

into a new Sales and Marketing Agreement resulting in damages and lost profits of $4,040,000;

and Paragon's failure to pay non-disputed commission amounts of $27,672.52 due under  the terms

of the Sales and Marketing Agreement (the "Unpaid Sales Commissions").   Under the terms of the

Sales and Marketing Agreement, Paragon was required to pay Sabemos the Unpaid Sales

Commission within 35 days of shipment of specified products, which they failed to do.  The

Unpaid Commissions are now over 360 days past due.

5.    I am informed and believe that beginning in late 2012 into early 2013, the prior

owners of Sabemos, Wayne and Cindy Seltzer (the "Seltzers"), made the decision that they were

going to shut down the Sabemos business in its entirety unless they were able to find a buyer for

the business.  Beginning in early 2013, the Seltzers' began negotiating a transaction with the

shareholders of Lucky Sages.  I am further informed and believe that the shareholders of Lucky

Sages informed Sabemos that Lucky Sages would only agree to acquire Sabemos if Paragon

entered into a new Sales and Marketing Agreement with Sabemos.  To that end, Lucky Sages

provided Paragon with the form of agreement it would require in order for it to acquire Sabemos

(the "New Agreement").  The terms of the New Agreement included three key terms, (1) a 5-year

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING

evergreen term that would continue to extend so long as Sabemos met its Minimum Depletion Requirement (the "Evergreen 5 Year Term"), (2) changing from a commission model to a buy/sell model with gross margins of 23% ("Buy/Sell Model") and (3) an equity-like participation agreement that provided that Sabemos would participate in the value it created in Paragon upon a sale (the "Change of Control Provision").

6.    In April and May of 2013 Kevin Swadish, the CEO of Sabemos and George Hadjis, the owner and Chief Executive Officer of Paragon had a series of calls and meetings discussing Lucky Sages' requirements.  I am informed that George Hadjis needed Sabemos to continue to function as his sales and marketing organization and orally agreed to enter into the New Agreement, including agreeing to the evergreen 5-Year Term, the Buy/Sell Model and the Change of Control Provision, in order to induce Lucky Sages to acquire Sabemos.  After Mr. Hadjis and Mr. Swadish reached this agreement, I am informed that Mr. Swadish asked Mr. Hadjis to send him an email confirming the agreement and that the parties would start the process of finalizing the agreement using the form provided by Lucky Sages, so that he could send it to Lucky Sages.  I am informed that Mr. Swadish helped Mr. Hadjis draft the email, which was sent by Mr. Hadjis to Mr. Swadish on May 8, 2013, and which was forwarded to the owners of Lucky Sages by Mr. Swadish as contemplated between Mr. Hadjis and Mr. Swadish.  Despite the alleged oral agreement that Mr. Hadjis and Mr. Swadish reached that was confirmed by Mr. Hadjis via email, Paragon refused to execute the New Agreement.

///
///
///
///
///
///
///
///

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING

7.      Based on my review of the claims held by the Debtor in the Rights of Action, I am informed and believe that the Rights of Action include valid and enforceable claims of the Debtor. While I cannot predict the outcome of either litigation or assess the collectability of any future judgment (given that discovery is in its early stages in the Cucapa Litigation and has not yet started in the Paragon Litigation), I believe that Debtor has the potential to obtain a judgment in either or both actions well in excess of the DIP Loan amount and the amount of the secured claim held by Continental.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct and that this declaration was executed on August 4, 2017 in Los Angeles, California.

Gregory Doll

FIRST DAY EMERGENCY MOTION FOR ORDER
AUTHORIZING POST-PETITION FINANCING